**ORIGINAL**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., and consolidated subsidiaries, ) ) ) Plaintiffs, ) ) v. ) ) THE UNITED STATES, ) ) Defendant ) ) | FILED<br>JUL 5 2012<br>U.S. COURT OF FEDERAL CLAIMS<br><br>12-437 T |

## COMPLAINT

Plaintiff American International Group, Inc. ("AIG"), on behalf of itself and its consolidated subsidiaries specified below, brings this action against Defendant, the United States, under the Tucker Act (28 U.S.C. § 1491), for additional statutory interest properly due the plaintiff under sections 6611 and 6621(d) of the Internal Revenue Code of 1986, as amended (the "Code"), and section 3301(c) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, as amended (the "Restructuring Act"), together with interest on such interest as provided by law. In support of its claim, Plaintiff alleges the following:

### Parties

1. AIG is a corporation organized and existing under the laws of the State of Delaware. Plaintiff is a holding company which, through its subsidiaries, is engaged in a broad range of financial services and insurance and insurance-related activities in the United States and abroad. At all relevant times, Plaintiff's principal place of business has been located at 70 Pine Street, New York, New York. Plaintiff's Employer Identification Number is 13-2592361.

2. At all relevant times, AIG has filed its Federal income tax returns, as permitted under the Code and Treasury Regulations, on a consolidated basis with other affiliated

695814

corporations (hereinafter sometimes collectively the "AIG Consolidated Group"). As the "common parent" of the AIG Consolidated Group, AIG files the consolidated Federal income tax returns, and otherwise acts in respect of Federal income tax matters on behalf of itself and the other members of that Group, as provided in those Regulations.

3. On or about September 14, 1992, AIG timely filed a consolidated federal income tax return for the calendar year 1991 on Form 1120 prescribed by the Internal Revenue Service ("IRS"). Each affiliate of AIG that joined in that consolidated return (hereinafter sometimes the "1991 Consolidated Return" or the "1991 Form 1120") was identified on the associated Form 851 Affiliations schedule, attached hereto as Exhibit 1 and incorporated herein by reference. Those affiliates, and their successors in interest, are the consolidated subsidiaries referenced in the caption.

4. The Defendant is the United States of America. The United States is named as a party pursuant to 28 U.S.C. § 1491(a)(1) because the actions and failures to act complained of herein were taken by Defendant through its officials and agencies, including the IRS.

## Jurisdiction

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1491(a) because this is a claim against the United States founded on an Act of Congress.

6. This complaint is timely filed under 28 U.S.C. §§ 2401 and 2501 because it is filed within six years after the claims first accrued; that is, the dates on which the overpayments were allowed on which additional interest is sought.

## Statutory Basis for the Claim

7. Section 6611 of the Code generally provides for the allowable interest ("statutory interest") on overpayments of Federal tax. Section 6621 of the Code, *inter alia*, prescribes the interest rates to be used in the computation of statutory interest.

8. Section 6621(d) of the Code provides: "To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period." The referenced subchapters are of chapter 67 of the Code. Subchapter B of chapter 67 includes section 6611, while subchapter A includes section 6601, which entitles the Government to interest on underpayments of tax.

9. As further described below, the IRS implements section 6621(d)'s requirement for a "net interest rate of zero" in a process known as "interest netting." The result of the application of interest netting may be to reduce the amount of interest that would otherwise be due to the Government on underpayments of tax for one taxable year (the "underpayment year"), or to increase the statutory interest allowable on overpayments determined for another year (the "overpayment year"). In order to perform netting either the taxpayer or the IRS must select the underpayment and overpayment balances which are to be "matched" against one another for purposes of equalizing interest rates. Moreover, it is important to track the balances used in previous netting calculations. A taxpayer that has received a netting benefit from matching a particular underpayment against a particular overpayment might receive a double benefit if the same balances were used again, unless the original netting benefit were recaptured.

10. Claims for the application of interest netting remain subject to the normal requirements that apply to claims relating to underpayment interest and overpayment interest under the Code. If interest netting produces an overpayment for the underpayment year, taxpayers must file an administrative claim for refund within the periods prescribed in section 6511 of the Code and thereafter may file suit as permitted under sections 6532 and 7422 of the Code. If interest netting would result in the allowance of additional statutory interest, then

taxpayers must file suit for recovery of such interest within the normal six year statute of limitations applicable to such actions. 28 U.S.C. §§ 2401, 2501; *General Instrument Corp. v. United States,* 33 Fed. Cl. 4 (1995).

11. Section 6621(d) of the Code was added by section 3301(a) of the Restructuring Act and was generally effective for interest accrued for periods after the date of enactment of that Act, July 22, 1998. Section 3301(c)(2) of the Restructuring Act, however, includes a special transition rule, not codified in 26 U.S.C., that provides that "subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments made by this section shall apply to interest for periods beginning before the date of the enactment of this Act" if the taxpayer files an appropriate request.

12. The first part of the quoted passage has been interpreted to require that the "applicable statutes of limitations" for both the underpayment and overpayment balances must have remained open on July 22, 1998 in order for the special transition rule to apply. *Federal National Mortgage Ass'n v. United States,* 469 F.3d 968 (Fed. Cir. 2006). The "applicable statute of limitation" for the underpayment year is the period during which a refund claim may be filed. The "applicable statute of limitation" for the overpayment year is the six-year period during which suit may be brought claiming additional overpayment interest.

13. The IRS procedures for requesting application of interest netting are set forth in two published revenue procedures. Revenue Procedure 99-43, 1999-2 C.B. 579, is applicable to requests for netting involving interest subject to the special transition rule (that is, interest accrued before October 1, 1998). Revenue Procedure 2000-26, 2000-1 C.B. 1257, applies to requests for netting involving interest that accrues on or after October 1, 1998. Both procedures generally require that a request for application of interest netting be filed specifying the tax

accounts and periods for which equivalent balances are to be matched, and represent that the same balances are not being used twice. The requests may be filed so long as the applicable statute of limitations for either the under- or overpayment years remains open. Rev. Proc. 99-43, §§ 4.03, 4.04; Rev. Proc. 2000-26, § 4.02. A single request may satisfy both procedures. Rev. Proc. 2000-26, § 5.08.

### The Overpayment Year: 1991

14. As alleged in paragraph 3, on or about September 14, 1992, AIG timely filed a consolidated income tax return for the calendar year 1991 on behalf of itself and the other members of the AIG consolidated group.

15. On information and belief, the Federal income tax liability of the AIG Consolidated Group for 1991 and related amounts have been assessed, abated, allowed, paid and refunded as indicated on the copy of an IRS transcript for that taxable year that is included as Exhibit 2, and all amounts shown thereon as assessed and not abated have been paid in full.

16. On information and belief, certain overpayments (the "Tax Overpayments") were allowed for the taxable year 1991, together with statutory interest in the amounts, and on or about the dates, shown below, and the applicable statute of limitations therefore remains open as to those Tax Overpayments:

| Date | Principal | Interest |
|---|---|---|
| July 18, 2006 | | $51,608,418.97 |
| August 7, 2006 | $ 100,593,485.00 | |

17. On information and belief, the IRS interest computations that underlie the interest assessed, abated, and allowed as reflected on the transcript for the taxable year 1991 are substantially as indicated on the schedules included as Exhibit 3.

18. On or about June 26, 2007, AIG timely filed a claim for refund or abatement relating to the taxable year 1991 that remains pending before the Internal Revenue Service. Allowance of this claim in whole or in part would not affect the previously allowed overpayments listed in paragraph 16.

### The Underpayment Years: 1997, 1998, and 1999

19. On or about September 11, 1998, AIG timely filed a consolidated income tax return for the calendar year 1997 on behalf of itself and the other members of the AIG Consolidated Group. On or about September 13, 1999, AIG timely filed a consolidated income tax return for the calendar year 1998 on behalf of itself and the other members of the AIG Consolidated Group. On or about September 9, 2000, AIG timely filed a consolidated income tax return for the calendar year 1999 on behalf of itself and the other members of the AIG Consolidated Group.

20. On information and belief, the Federal income tax liability of the AIG Consolidated Group for 1997, 1998, and 1999 and related amounts have been assessed, abated, allowed, paid and refunded as indicated on the copies of IRS transcripts for those taxable years that are included as Exhibit 4, and all amounts shown thereon as assessed and not thereafter abated have been paid in full. The amounts so assessed and not abated include underpayments for each of the taxable years concerned (the "Tax Underpayments") and related interest.

21. On information and belief, the following amounts have been paid (including allowed credits that are treated as payments under section 7422(d) of the Code), on or about the dates indicated, in respect of the Federal income tax liability of the AIG Consolidated Group for the taxable year 1998.

| Date | Amount Paid |
|---|---|
| July 19, 2010 | $37,939.70 |
| July 19, 2010 | $41.60 |
| August 9, 2010 | $702.66 |
| September 27, 2010 | $301.86 |
| October 18, 2010 | $25,570.09 |
| October 18, 2010 | $711,126.51 |
| January 31, 2011 | $2,260.38 |

22. On or about July 5, 2012, AIG, on behalf of the AIG Consolidated Group, has filed a claim for refund or credit of an asserted overpayment of interest on its Federal income tax liability for the taxable year 1998 on IRS Form 843 (the "1998 Form 843"). This claim was based partially on a request for application of interest netting to underpayment interest accrued for the taxable year 1998 and interest accrued on equivalent overpayments that had been allowed to the Group for its taxable years 1988 and 1989. The claim requests refund or credit of an asserted overpayment of $729,777.48, or such other amount properly determined under law, and allowable interest thereon.

23. The statute of limitations under section 6511(a) of the Code for filing claims for refund for the AIG Consolidated Group's taxable year 1998 remains open to the extent of permitting recovery of the $777,942.80 paid as set forth in paragraph 21, less any amount recovered under the 1998 Form 843, and has otherwise expired. The statutes of limitation for filing claims for refund for the AIG Consolidated Group's taxable years 1997 and 1999 have expired.

24. On information and belief, the IRS interest computations that underlie the interest assessed, abated, and allowed as reflected on the transcripts for the AIG Consolidated Group's taxable years 1997, 1998, and 1999 are substantially as indicated on the schedules included as Exhibit 5.

25. On or about April 4, 2008, and August 25, 2008, AIG, on behalf of the AIG Consolidated Group, filed claims for refund or credit of tax and related amounts paid in for its taxable year 1997, and allowable interest thereon. On February 26, 2009, AIG filed suit in the United States District Court for the Southern District of New York seeking a refund for that year on the grounds set forth in those claims. That action remains pending before the District Court.

26. AIG, on behalf of the AIG Consolidated Group, has timely filed various claims for refund or credit of tax and related amounts paid in for its taxable years 1998 and 1999, and allowable interest thereon. Included among such refund claims are claims for each of those taxable years dated April 4, 2008, and September 9, 2010, which remain under consideration by the Internal Revenue Service.

## Request for Application of Netting

27. On or about July 5, 2012, AIG, on behalf of the AIG Consolidated Group, has filed with the Internal Revenue Service a request for application of netting (the "Netting Request"), asking for allowance of additional statutory interest on the Tax Overpayments determined for its taxable year 1991 described in paragraph 16 by reason of netting with equivalent Tax Underpayments that have been determined for the Group's taxable years 1997, 1998, and 1999, and specifying the accounts and periods that were to be matched.

28. The Netting Request was timely filed within the applicable statute of limitations for the Tax Overpayments and otherwise substantially in compliance with the pertinent provisions of Revenue Procedure 99-43 and Revenue Procedure 2000-26. The computations included with the Netting Request did not use any balances that were used in any prior netting computation, or any balances that were used in the request for netting incorporated in the 1998 Form 843. A copy of the Netting Request and the exhibits thereto is included as Exhibit 6 and incorporated by reference herein.

29. The computations of the underpayment balances for 1997, 1998, and 1999 that were submitted with the Netting Request assumed allowance of the refund claim set forth on the 1998 Form 843, and certain other adjustments to the existing interest computations, as more particularly described in the Netting Request. The computations did not assume any resolution of the pending refund claims for those taxable years described in paragraphs 25 and 26. Under those assumptions, the computations underlying the Netting Request indicate that the additional interest allowable through June 30, 2012 for the taxable year 1991 is $30,231,114.59.

30. AIG has made its best efforts to claim netting benefits to which it would be entitled as a result of matching the Tax Overpayments determined for its taxable year 1991 against equivalent Tax Underpayments that so far have been determined for its taxable years 1997, 1998, and 1999. AIG acknowledges that the identity and amount of the "equivalent underpayments" for the taxable years 1997, 1998, and 1999 that are to be matched, and the additional statutory interest for 1991 allowable as a result, will necessarily be affected by the outcome of the pending refund claims for 1997, 1998, and 1999 and related proceedings. AIG is bringing this action to protect itself against the running of the six-year statute of limitations on suing for additional overpayment interest before a final resolution of its tax liabilities for 1997, 1998, and 1999.

## CLAIM FOR RELIEF

31. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1 through 30 as if fully set forth herein.

32. Portions of the Tax Overpayments and the Tax Underpayments are "equivalent underpayments and overpayments by the same taxpayer" within the meaning of section 6621(d) of the Code and section 3301(c)(2) of the Restructuring Act for periods after March 15, 1998, as more particularly described in the Netting Request and the associated computations.

33. Plaintiffs are therefore entitled to the net interest rate of zero on such equivalent overpayments and underpayments for those periods.

34. Applying the net interest rate to such equivalent overpayments and underpayments as authorized by section 6621(d) of the Code and section 3301(c)(2) of the Restructuring Act in the manner contemplated by the Netting Request, Plaintiffs would be entitled to additional statutory interest in the approximate amount of $30,231,114.59 as of June 30, 2012.

35. WHEREFORE, Plaintiffs hereby demand judgment against Defendant in the amount of $30,231,114.59, or such amount as may be allowed by the Court upon a proper recomputation, plus additional interest, costs, and attorneys fees allowable by law.

Dated this 5th day of July, 2012.

Respectfully submitted,

CHARLES M. RUCHELMAN
*Attorney of Record*
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Ste. 1100
Washington, D.C. 20005
Tel: 202-862-7834
Fax: 202-429-3301
E-mail: cruchelman@capdale.com

JAMES E. SALLES
CHRISTOPHER S. RIZEK
*Of Counsel*

*Attorneys for Plaintiffs*